UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSTAS EFTHYMIOU,<br><br>    Petitioner,<br><br>v.<br><br>HEATHER LABONTE,<br><br>    Respondent. | Case No. 22-cv-04694-VC<br><br>**ORDER AWARDING PARTIAL FEES AND COSTS** |

Federal law provides that "[a]ny court ordering the return of a child" pursuant to the Hague Convention on the Civil Aspects of International Child Abduction "shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees . . . and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). In February, this Court ordered the return of N.E. to Cyprus under the Hague Convention and set a briefing schedule on a potential award of such expenses. *Efthymiou v. LaBonte*, 2023 WL 1491252, at *13 (N.D. Cal. Feb. 3, 2023).

**I**

LaBonte makes a threshold procedural argument that Efthymiou did not timely move for an award of fees and costs. But the Court set a briefing deadline with which both parties complied; the federal rules only require a motion for fees within 14 days of judgment "unless . . . a court order provides otherwise." Fed. R. Civ. P. 54(d)(2)(B). Furthermore, the statutory provision at issue does not simply enable a prevailing petitioner to seek fees and costs, but rather mandates that the court "shall order" the respondent to pay such expenses unless it would be

clearly inappropriate to do so. 22 U.S.C. § 9007(b)(3); *see also Salazar v. Maimon*, 750 F.3d 514, 519 (5th Cir. 2014) (awarding fees is "a mandatory obligation"); *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004) (district court has "the duty . . . to order" payment unless the exception is met). And the law puts the burden on the respondent to establish that fees are inappropriate. The Court therefore set a briefing schedule regarding fees in its findings of fact and conclusions of law rather than waiting for a motion from Efthymiou. In response to LaBonte's argument that the sequence of briefing made it difficult for her to argue against an award of fees, the Court ordered further filings and allowed LaBonte to have the last word, with no page limit. There is no procedural bar to awarding fees here.

## II

### A

Efthymiou requests an award of $199,878.84. The first substantive question is which of his expenses were "necessary" under the statute. 22 U.S.C. § 9007(b)(3). He categorizes them as legal fees and expenses, deposition and trial transcript costs, printing and copying costs, accommodation for himself in San Francisco during the trial, and airfare for returning N.E. home to Cyprus. Dkt. No. 101. He claims not to seek any award related to his expert (whose testimony was "neither reliable nor credible," 2023 WL 1491252, at *9), his travel expenses to California to collect N.E. at the end of last summer (which would have been incurred even absent a custody dispute), or most of his living expenses in California litigating this case. Dkt. No. 101.

Efthymiou bears the burden of explaining what his expenses were, and a portion of the requested award must be rejected for failure to meet that burden. In particular, the descriptions for $16,870 worth of itemized expenses have been redacted in whole or in part, making it impossible to determine whether they were necessary or appropriate. Dkt. Nos. 101-1, 101-3, 101-7. Similarly, while Efthymiou states that he is not seeking reimbursement related to his expert, the itemizations include significant fees for consultations with that expert. Based on his representation that he is not seeking those fees, those line items are set aside, reducing the request by $24,170. (It's not necessary to decide whether Efthymiou would be entitled to

reimbursement for expert costs, but it was probably wise to disclaim such expenses.) For both the redacted descriptions and expenses related to the expert, the reductions are larger than they might have been because Efthymiou's filings combine multiple expenses into single line items. As it's impossible to tease apart such entries, where a line item is either partially redacted or includes both expert and non-expert work, it must be set aside entirely.

Additionally, Efthymiou's lawyers appear to have billed him $3,850 for their time flying from Chicago to San Francisco. Dkt. No. 101-5 at 4. The entries do not say that the lawyers were working during that time. That seems to have been an oversight, as they wrote off their time flying back. *Id.* at 5. In any event, while attorneys' "reasonable transportation and lodging" expenses are covered by the statute, their time in transit is not. That amount is therefore excluded.

While it is permissible to hire non-local counsel, Efthymiou's filings do not demonstrate why his lawyers needed to travel to California in October. The $3,431.52 in October travel costs are therefore excluded. Dkt. No. 101-3. The December travel costs, on the other hand, were necessary to attend trial. *See Cuellar v. Joyce*, 603 F.3d 1142, 1143–44 (9th Cir. 2010). This includes the plane tickets purchased in November. While LaBonte suggests these were for an unnecessary November trip, the lack of plane tickets on the December bill suggests that counsel pre-booked their tickets to attend trial. *See* Dkt. Nos. 101-4, 101-5.

LaBonte is correct that it was not necessary to have both of Efthymiou's lawyers attend the parties' depositions. Dkt. No. 101-4 at 3–4. The amount requested is reduced by $2,450 for the original depositions and $1,925 for Efthymiou's supplemental deposition. LaBonte is also correct that she should not have to bear expenses related to Efthymiou's unnecessary motion to exclude her expert. A further $775 is therefore deducted. Dkt. No. 101-5.

Efthymiou's attorneys' fees for attendance at the trial were $31,200. Dk. No. 101-5. There's no question that having one's attorneys at trial is necessary. But the presentation of evidence was excessively repetitive, driving up costs significantly. This amount is therefore reduced by half, to $15,600. To be sure, responsibility for this inefficiency lies with LaBonte's

3

counsel as well. But cutting the attendance fees in half still leaves the trial preparation time—including before trial and in the mornings and evenings during trial. Those entries no doubt had their own inefficiencies, and while it might be prudent to over-prepare, this adjustment to the actual trial presentation time is surely appropriate.

The billing records reflect a no-contact motion that was never filed in this Court. Dkt. No. 101-7. It's not possible to tell whether this was necessary for this case in particular, rather than just part of the larger dispute between the parties. A further $1,925 is excluded.

LaBonte challenges the cost of Efthymiou and N.E.'s return flights on two grounds: that Efthymiou booked them a few days later than he might have, increasing the cost, and that the receipt indicates that a credit from previous tickets was applied. The first argument fails because LaBonte's failure to relinquish custody threw the departure into chaos. She can't now hold a last-minute booking against Efthymiou. Her second argument fails for a similar reason: The most likely source of the credit is flights that Efthymiou booked after this Court ruled but before LaBonte repeatedly frustrated his plans to return home. And even assuming that some of the credit could be traced back to the original August return trip—the one that LaBonte's actions delayed by six months—it would not be fair to assume that Efthymiou's previous willingness to bear the cost of travel survived this case. The cost of travel home is explicitly contemplated by the statute, and it is appropriate to include here.

After the above reductions, Efthymiou's necessary expenses stand at $128,882.32.

**B**

The second question on the merits is whether ordering LaBonte to pay Efthymiou's necessary expenses would be "clearly inappropriate." The statute doesn't define what makes a fee award clearly inappropriate. Some circuits have suggested that this language gives district courts the same "broad discretion" they enjoy under many other fee-shifting provisions. *Whallon*, 356 F.3d at 140; *West v. Debrev*, 735 F.3d 921, 932 (10th Cir. 2013). But such a broad view of the exception ignores the statutory text. The Convention itself provides only that courts "may" direct a losing respondent to pay the necessary expenses of a petitioner. Hague Convention on

the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, art. 26. Congress went out of its way to replace that permissive "may" with the statute's mandatory "shall"—subject only to the "clearly inappropriate" exception. 22 U.S.C. § 9007(b)(3). The best understanding of that exception, then, is that it empowers courts to "look to factors that are familiar in the fee award context" so long as they do not construe it "so broadly as to make the analysis indistinguishable" from typical fee-shifting statutes. *Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018). The Ninth Circuit's sole published ruling on this provision emphasized that it should be construed in light of the Convention's purpose of deterring unlawful conduct by parents in the first instance. *Cuellar*, 603 F.3d at 1143.

LaBonte's financial condition is a relevant consideration. *Whallon*, 356 F.3d at 139, 141 (affirming a twenty-five percent reduction based on the financial condition of the respondent); *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir. 1995) (trimming an award of fees and costs by nearly fifty percent based on the respondent's "straitened financial circumstances"). LaBonte says that she has limited income, few assets, and that she cannot pay any award. Dkt. No. 96-1 (LaBonte decl.). She makes less than $4,000 per month working several jobs as a nanny and pet-sitter and has expenses that match or exceed that (mostly rent). *Id.* at 2. She took on significant debt to litigate this case, including borrowing $74,000 from her mother, and raised more funds online. *Id.* She still owes fees to her own attorneys. *Id.*

It's likely that LaBonte will not be able to pay any significant amount of Efthymiou's expenses. But it's also likely that the expense of this case will be a meaningful burden on Efthymiou, who seems to pay for N.E.'s expenses in Cyprus. At trial LaBonte described Efthymiou and his family as wealthy. *E.g.*, Tr. 105.[1] But that characterization was vague, inconsistent with Efthymiou's testimony, and contradicted by other evidence—including other testimony by LaBonte. Tr. 76–77, 478. Even if in relative terms Efthymiou has more resources than LaBonte, it's apparent that neither parent can easily bear the cost of this case. That is

---

[1] The trial transcript is available at Dkt. Nos. 76–80. Page citations are to the transcript's native page numbers.

regrettable. But it's not within the Court's power to undo the expense of trial after the fact.

Another relevant consideration is whether LaBonte believed in good faith that her retention of N.E. was "legal or justified." *Rath*, 898 F.3d at 1311. It's only fair to distinguish between a parent who knew they were doing something wrong and a parent who honestly thought they would prevail. LaBonte deserves some credit for the fact that she was not scheming from the outset to retain N.E. when he came to visit. 2023 WL 1491252, at *9. But she was soon on board with the idea that he might stay, and she helped entrench his thinking about Cyprus and his father. *Id.* at *9, 13. Furthermore, while actual knowledge of fee-shifting provisions is not necessary to make an award, LaBonte was not in the dark. She knew that she might have to pay for Efthymiou's legal fees if she lost this case. Trial Ex. 28 at 86. And she knew that, win or lose, further custody litigation could follow in either California or Cyprus. Trial Ex. 25 at 9. Her subjective belief in her cause counts for something—but not everything. It was within LaBonte's power to skip ahead to an actual custody dispute by sending her son home. Efthymiou did not have that same power. Instead, he had to litigate this case for months.

In light of LaBonte's financial condition and her subjective good faith, it is appropriate to reduce the award of necessary expenses by one-third (with half of that reduction attributed to each of those considerations). But some award is clearly appropriate. LaBonte is therefore ordered to pay Efthymiou for his necessary expenses in the amount of $85,921.55.

**IT IS SO ORDERED.**

Dated: May 24, 2023

_____
VINCE CHHABRIA
United States District Judge